UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BRENDA ANDERSON,** individually,
and on behalf of others similarly
situated,                                              Case No.

               Plaintiff,

vs.

**THE MINACS GROUP (USA) INC.,**
A Delaware Corporation,

               Defendant.

---

## COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiff, Brenda Anderson, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, The Minacs Group (USA) Inc., and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Brenda Anderson, individually and on behalf of all similarly situated persons employed by Defendant, The Minacs Group (USA) Inc. (hereinafter referred to as "Minacs" or "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Defendant's breach of its contractual obligations to pay

1

employees for all hours worked.

2.      Defendant is an international business and technology outsourcing company that operates and has operated "call centers" in Farmington Hills, Michigan and other locations across the country where telephone-dedicated hourly call center representatives ("Representatives") handle telephone calls from customers of the various manufacturing, retail, banking, and health care companies that utilize Defendant's services.

3.      Plaintiff and similarly situated employees worked as Representatives for Minacs in its Farmington Hills, Michigan call center within the past three (3) years.

4.      As Representatives, Plaintiff and all other similarly situated employees were victims of Defendant's common policy of only paying its Representatives for the time they spent engaged in telephone calls, thereby depriving them of compensation for various compensable work activities including:

a.      pre-shift time spent booting up their computers, logging into required computer software networks and applications, and exchanging work-related e-mails and other communications;

b.      mid-shift time spent logging into required computer networks and software applications upon returning from lunch breaks, troubleshooting connectivity issues with Defendant's computer and telephone systems, exchanging work-related e-mails and other communications, and taking rest periods of short duration;

c.      post-shift time spent shutting down their computers and logging out of required computer networks and software applications.

5.     This policy results in Representatives not being paid for all hours worked, including hours in excess of 40 in a workweek, in violation of the FLSA. *See* 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.").

6.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.

7.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

8.     More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

9.     Plaintiff brings this collective and class action pursuant to 29 U.S.C. §

216(b) and Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated hourly Representatives employed by Defendant during the applicable time period, and seeks declaratory relief and unpaid wages and overtime, liquidated damages, fees and costs, and any other remedies to which she may be entitled.

10.     In addition, Plaintiff brings an individual claim for retaliation under 29 U.S.C. § 215(a)(3), and seeks to recover compensatory damages, liquidated damages, punitive damages, fees and costs as a result of Defendant terminating her employment because she complained to Defendant about the overtime violations alleged herein.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

12.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

13.     The court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367.

14.     This Court has personal jurisdiction over Defendant because at all

relevant times it has done business within the state of Michigan and is registered with the Corporations Division of the Michigan Department of Licensing and Regulatory Affairs (Business ID: 627820).

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district, employs Representatives in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## PARTIES

16.    Plaintiff Brenda Anderson is a resident of Detroit, Michigan.

17.    Plaintiff was employed by Defendant as a Representative from approximately September 2011 to October 2015.

18.     Plaintiff signed a consent form to join this lawsuit, which is attached as *Exhibit 1*.

19.    Defendant Minacs is a business and technology outsourcing provider for industries including manufacturing, retail, banking, health care and the public sector.

20.     Defendant claims about 21,000 employees worldwide across 35 call centers.

21.    In August 2016, Minacs was acquired by SYNNEX Corporation, a business process services company, and is in the process of being integrated into Concentrix, a wholly owned subsidiary of SYNEX that provides similar services as

Minacs.

22.     Minacs is incorporated in Delaware and is registered and active in Michigan, with a registered agent at 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

## GENERAL ALLEGATIONS

23.     The FLSA applies in this case on an enterprise basis.

24.     Defendant's annual sales exceed $500,000.

25.     At all relevant times Defendant had more than two employees engaged in interstate commerce.

26.     Defendant's Representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

27.     Defendant employed Plaintiff Brenda Anderson as a full-time Representative at its call center in Farmington Hills, Michigan from approximately September 2011 to October 2015.

28.     Plaintiff worked for Defendant Monday through Friday, as well as additional shifts on the weekends.

29.     On a typical workday, Plaintiff arrived at work and began the boot-up process at approximately 8:00-9:00 a.m. and shut down her computer and left work at approximately 5:00-6:00 p.m.

30.     Plaintiff and other similarly situated Representatives frequently worked in excess of 40 hours in a workweek.

31.     Plaintiff's most recent hourly rate was $11.25 per hour.

32.     As Representatives, Plaintiff's and other similarly situated employees' duties are to answer telephone calls regarding billing and account activity from customers of the various manufacturing, retail, banking, and health care companies that utilize Defendant's services.

33.     In order to perform their jobs, Plaintiff and other Representatives were required to boot up and log in to various computer networks, software programs, and applications in order to access required information and software.

34.      The boot-up/log-in process took substantial time on a daily basis ranging from 3 to 10 minutes per day, and up to 30 minutes on days or more when their computers were not working properly.

35.     A Representative could not engage in telephone calls until *after* the computer boot-up/log-in process was complete.

36.     Plaintiff and all other Representatives worked at least 3 to 10 minutes before each shift for which they were not compensated.

37.     The unpaid time Plaintiff and other Representatives spent booting up computers and logging into software applications directly benefitted Defendant.

38.     This boot-up/log-in process was an essential part of Plaintiff's and other Representatives' job responsibilities.

39.     During the course of the workday, there were periods of time at which Representatives including Plaintiff were not engaged in telephone calls – but still

working.

40.     As a result, Plaintiff and other Representatives were deprived of compensation for hours worked, including hours in excess of 40 in a workweek.

41.     During the course of the workday, Plaintiff and other Representatives took unpaid meal breaks.

42.     Upon returning to their work computers, Plaintiff and other Representatives spent approximately 3 to 10 minutes logging back in to various computer networks, software programs, and applications in order to access required information and software.

43.     Plaintiff and other Representatives were not paid for the approximately 3 to 10 minutes they spent logging back in to various computer networks, software programs, and applications in order to access required information and software because when performing such activities, they were not engaged in telephone calls.

44.     During the course of the workday, Plaintiff's and other Representatives' computer or telephone equipment became disconnected from Defendant's networks and programs, including "Citrix."

45.     During the disconnection period, Representatives were required to troubleshoot connectivity issues with Defendant's computer and telephone systems as well as exchange work-related e-mails and other communications, but were unable engage in telephone calls, and therefore did not receive compensation for that compensable work time.

46.     During the course of the workday, Plaintiff and other Representatives took "[r]est periods of short duration, running from 5 minutes to about 20 minutes," *see* 29 CFR § 785.18, which are compensable under the FLSA, *id,* but were not paid for this time because there were not engaging in telephone calls.

47.     Finally, at the end of the workday, Plaintiff and other Representatives spent approximately 2 to 3 minutes shutting down their computers and logging out of required computer software applications, but were not paid for this time because there were not engaged in telephone calls.

48.     At all relevant times, Defendant controlled Plaintiff's and other Representatives' work schedules, duties, protocols, applications, assignments and employment conditions.

49.     Defendant possesses, controls, and/or has access to information and electronic data that shows the specific times Plaintiff and other Representatives booted up and logged into and out of their computers each day and the time they logged into and out of their telephone systems.

50.     At all relevant times, Defendant was able to track the amount of time that Plaintiff and other Representatives spent booting up their computers, logging into required computer software applications, exchanging work-related e-mails and other communications, troubleshooting connectivity issues with Defendant's computer and phone systems, taking rest and lunch breaks, and shutting down their computers and logging out of required computer software applications; however,

Defendant failed to pay Plaintiff and the putative Class for such activities in connection with each shift.

51.     At all relevant times, Defendant's policies and practices deprived Plaintiff and other Representatives of wages owed for the compensable pre-, mid-, and post-shift work activities described above.

52.      Because Plaintiff and other Representatives often worked 40 hours or more in a workweek, Defendant's pay practices also deprived them of overtime pay at a rate of 1.5 times their regular rate of pay.

53.     For example, during the workweek of Sunday, August 30, 2015 through Saturday, September 5, 2015, Plaintiff worked 6 shifts Monday through Saturday, lasting approximately 7-10 hours each, and in total worked approximately 50 hours, but Defendant paid her for less than 40 hours of work. *See Exhibit 2*, Paystub dated September 18, 2015.

54.     Defendant asserts it is a leader in its field.

55.     Defendant employs thousands of Representatives, and knew or should have known that during each workday Plaintiff and other Representatives performed compensable pre-, mid-, and post-shift work activities that went uncompensated and continue to go uncompensated due to Defendant's common unlawful policy and practice of only paying its Representatives for the time spent engaged in telephone calls.

56.     Plaintiff and other similarly situated Representatives complained to

Defendant about not receiving overtime compensation but Defendant willfully failed to pay their claimed unpaid wages and has refused to repeal its unlawful policy of only paying its Representatives for the time spent engaged in telephone calls.

57.     Thus, Defendant had knowledge of its overtime violations but failed to pay the wages owed.

## ALLEGATIONS REGARDING PLAINTIFF'S RETALIATION CLAIM

58.     On or around September 21, 2015, Plaintiff and approximately six other Representatives prepared a written complaint regarding Defendant's failure to pay Representatives for time during the workday in which they were not engaged in telephone calls, and filed the complaint with Defendant's human resources office.

59.     Plaintiff's decision to prepare and send the complaint to Defendant's human resources office was in part due to Defendant's failure to pay her overtime compensation in the week of August 30, 2015 through September 5, 2015, as set forth above.

60.     On or around September 26, 2015, Defendant's human resources officer Lisa Masierak informed Plaintiff, without explanation, that Defendant would not provide the correct pay in response to the complaint made by Plaintiff and other Representatives on or around September 21, 2015.

61.     On or around October 1, 2015, Defendant terminated Plaintiff's employment.

62.     Defendant's stated reason for terminating Plaintiff's employment was

that she was 20 minutes late for her shift on September 29, 2015.

63.     However, on September 29, 2015 Plaintiff arrived on time for her scheduled shift but was unable to engage in telephone calls due to connectivity issues with Defendant's computer and telephone systems.

64.     Defendant's stated reason for terminating Plaintiff's employment was pretextual.

65.     Defendant's actual reason for terminating Plaintiff's employment was that she "filed [a] complaint" with Defendant, within the meaning of 29 U.S.C. § 215(a)(3).

66.     In addition to Plaintiff, at least 2 of the other Representatives who complained to Defendant on or around September 21, 2015 were terminated shortly thereafter.

67.     As a result of Defendant's retaliatory termination of Plaintiff's employment, Plaintiff has sustained damages including lost wages, and is entitled to recovery all such amounts, as well as any other "legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)…." 29 U.S.C. § 216(b).

## COLLECTIVE ACTION ALLEGATIONS

68.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly customer service representatives who worked for Defendant in the United States at any time during the last three years.*

12

(hereinafter referred to as the "Collective").   Plaintiff reserves the right to amend this definition as necessary.

69.     Excluded from the proposed Collective are Defendant's executives, administrative, and professional employees, including computer professionals and outside sales persons.

70.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).   The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

71.     The employment relationships between Defendant and every Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated time owed to each Representative – do not vary substantially among the Collective members.

72.     The key legal issues are also the same for every Collective member. These common legal and factual questions, include, but are not limited to, the following:

a.     Whether the pre-shift time Representatives spent booting up their computers, logging into required computer networks and software

13

applications, and exchanging work-related e-mails and other communications is compensable time;

b.      Whether the mid-shift time Representatives spent logging into required computer networks and software applications upon returning from lunch breaks, troubleshooting connectivity issues with Defendant's computer and telephone systems, exchanging work-related e-mails and other communications, and taking rest periods of short duration is compensable time;

c.      Whether the post-shift time Representatives spent shutting down their computers and logging out of required computer networks and software applications is compensable time; and

d.      Whether Collective members are owed overtime wages for time spent performing preliminary, mid-shift, and post-shift work activities, and if so, the appropriate amount thereof.

73.     Plaintiff estimates the Collective, including both current and former employees over the relevant period, will include several thousand members. The precise number of Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly customer service representatives who worked for Defendant in the United States at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").   Plaintiff reserves the right to amend this definition as necessary.

75.     The members of the Rule 23 Nationwide Class are so numerous that

joinder of all Rule 23 Nationwide Class members in this case would be impractical.

Plaintiff reasonably estimates that there are thousands of Rule 23 Nationwide Class

members. Rule 23 Nationwide Class members should be easy to identify from

Defendant's computer systems and electronic payroll and personnel records.

76.     There is a well-defined community of interest among Rule 23

Nationwide members and common questions of law and fact predominate in this

action over any questions affecting individual members of the Rule 23 Nationwide

Class.   These common legal and factual questions, include, but are not limited to,

the following:

a.   Whether Defendant is contractually obligated to pay Rule 23 Nationwide Class members for pre-shift time spent booting up their computers, logging into required computer networks and software applications, and exchanging work-related e-mails and other communications;

b.   Whether Defendant is contractually obligated to pay Rule 23 Nationwide Class members for mid-shift time spent logging into required computer networks and software applications upon returning from lunch breaks, troubleshooting connectivity issues with Defendant's computer and telephone systems, exchanging work-related e-mails and other communications, and taking rest periods of short duration;

c.   Whether Defendant is contractually obligated to pay Rule 23 Nationwide Class members for post-shift time spent shutting down their computers and logging out of required computer networks and software applications;

d.   Whether Defendant's non-payment of wages for all compensable time amounts to a breach of contract; and

e.   Whether Rule 23 Nationwide Class members are owed wages (above

the federally mandated overtime wages due under the FLSA) for time spent performing preliminary, mid-shift, or post-shift work activities, and if so, the appropriate amount thereof.

77.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.   Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

78.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

79.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.   Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

80.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

81.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

82.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)

### <u>VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME</u>

83.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

84.     At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

85.     Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

2:16-cv-13942-NGE-SDD   Doc # 1   Filed 11/07/16   Pg 18 of 25   Pg ID 18

86.     At all times relevant to this action, Plaintiff and other Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

87.     Plaintiff and other Collective members either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

88.     Defendant has had, and continues to have, an annual gross business volume in excess of $500,000.

89.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and other Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

90.     At all times relevant to this action, Defendant required Plaintiff and all other Collective members to perform compensable pre-shift, mid-shift, and post-shift work activities each shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

91.     The pre-shift, mid-shift, and post-shift work performed by Plaintiff and other Collective members every session is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

92.     In workweeks where Plaintiff and other Collective members worked 40 hours or more, the uncompensated pre-, mid-, and post-shift work should have been paid at the federally mandated rate of 150% of each employee's regularly hourly

18

wage, 29 U.S.C. § 207(a)(1), but was not.

93.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its Representatives to perform pre-, mid-, and post-shift work activities and Defendant could have properly compensated Plaintiff and other Collective members for this off-the-clock work they performed, but did not.

94.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 Nationwide Class Action)

### BREACH OF CONTRACT

95.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

96.     At all times relevant to this action, Defendant had contracts with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

97.     Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

98.     Plaintiff and every other Rule 23 Nationwide Class member performed

under the contract by doing their jobs and carrying out the compensable pre-, mid-, and post-shift work activities that Defendant required or accepted.

99.     By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the pre-, mid-, and post-shift work activities performed each shift, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

100.    Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the applicable minimum wage but less than 40 hours per week (i.e., pure "gap time" claims).

101.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing pre-, mid-, and post-shift work, which is a fundamental part of an "employer's job."

102.    As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiff and every other member of the Rule 23 Nationwide Class have been damaged, in an amount to be determined at trial.

103.    These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

**COUNT III**
**(Brought by Plaintiff Individually)**

<u>**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**</u>
<u>**29 U.S.C. § 201, *et seq*. – RETALIATION**</u>

104.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

105.   Section 215 of the FLSA provides in relevant part:

> (a)    … [I]t shall be unlawful for any person—
> …
> (3)   to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act …, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

106.    In a recent opinion addressing Section 215(a)(3), the Supreme Court held:

> To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones.

*Kasten v. Saint-Gobain Performance Plastics Corp*., 563 U.S. 1, 14, 131 S. Ct. 1325, 1335 (2011).

107.   "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between

21

the protected activity and the adverse employment action." *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

108.   Plaintiff engaged in protected activity under the FLSA by preparing and filing a complaint regarding unpaid overtime wages with Defendant's human resources office on or around September 21, 2015.

109.   Plaintiff's protected activity was known by Defendant, as evidenced by, *inter alia*, Defendant's human resources officer Lisa Masierak informing Plaintiff on or about September 26, 2015 that Defendant would not provide the correct pay in response to the complaint made by Plaintiff and other Representatives on or around September 21, 2015.

110.   Defendant took adverse action against Plaintiff by terminating her employment (for a pretextual reason) on or around October 1, 2015.

111.   The adverse action Defendant took against Plaintiff was caused by her filing of a complaint regarding unpaid overtime wages.

112.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of Section 215(a)(3), an employee is entitled to "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages," as well as attorneys' fees and costs. Accordingly, Plaintiff seeks to recover compensatory damages, liquidated damages, punitive damages, fees and costs.

## <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff, Brenda Anderson, requests an entry of an Order for

the following relief:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   Certifying this action as a class action pursuant to Rule 23(b)(2) and (b)(3) with respect to the breach of contract claim (Count II);

c.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all Collective members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.   Designating Plaintiff as the representative of the FLSA Collective and the Rule 23 Nationwide Class and undersigned counsel as Class Counsel for the same;

e.   Declaring Defendant willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.   Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Class members by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

g.   Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the Collective and the Rule 23 Nationwide Class, the full amount of damages and liquidated damages available by law;

h.   Declaring Defendant retaliated against Plaintiff by terminating her employment and awarding Plaintiff all relief available for Defendant's violation of 29 U.S.C. § 215(a)(3), including but not limited to compensatory damages, liquidated damages, and

23

punitive damages;

i.  Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j.  Awarding pre- and post-judgment interest to Plaintiff on these damages; and

k.  Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Brenda Anderson, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:   November 7, 2016

By:   */s/Jesse L. Young*_____
Jesse L. Young (P72614)
Charles R. Ash, IV (P73877)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
jyoung@sommerspc.com
crash@sommerspc.com

Jason T. Brown *(PHV)*
Nicholas Conlon *(PHV)*
JTB LAW GROUP, L.L.C.
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (877) 561-0000

24

jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiffs*